IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

SYDNEY LAKE,

      **Plaintiff,**

      v.

DELTA, DELTA, DELTA NHC-
UNIVERSITY OF KANSAS (THETA
OMEGA CHAPTER) LLC,

      **Defendant.**

Case No. 2:21-cv-02358-HLT-GEB

**MEMORANDUM AND ORDER**

Plaintiff Sydney Lake filed this negligence case against Defendant Delta Delta Delta. Plaintiff's claim arises out the conditions of her sorority house, which she claims had mold that caused her serious health issues. Defendant moves for summary judgment, arguing that Plaintiff signed waivers that prohibit her negligence claim. Doc. 16. Because it is undisputed that Plaintiff signed clear and unequivocal waivers releasing Defendant from liability on her negligence claim, the Court grants the motion and enters judgment in Defendant's favor.

**I.    BACKGROUND**

The following facts are uncontroverted. Doc. 21 at 1-6. Plaintiff is a student at the University of Kansas, which has options for participation in Greek life. Doc. 17 at ¶¶ 1-2. One option is the Delta Delta Delta sorority, which has a residential facility. *Id.* ¶¶ 2-3. Sorority members are required to sign a Housing License Agreement before moving into the chapter house. *Id.* ¶ 5.

Plaintiff signed a Housing License Agreement on May 6, 2019. *Id.* ¶ 6. The agreement states it is a "binding legal agreement granting a housing license to Resident." *Id.* ¶ 7. This provision is in bold font. Doc. 17-2 at 7. Plaintiff acknowledged that she had "read, received,

understood and agree[d] to the terms of this license agreement, the policies, procedures and rules of the Fraternity and the Chapter." Doc. 17 at ¶ 8. Plaintiff agreed to accept her room and the chapter house "as suitable for the purposes for which they are offered" and as "in good and satisfactory condition." *Id.* ¶ 9. Any defects in the room and chapter house were waived. *Id.*

The Housing License Agreement contains a provision regarding "Release of Liability: Indemnity." The entire "Release of Liability: Indemnity" paragraph is in bold font, unlike the rest of the agreement. *See* Doc. 17-2 at 10. Plaintiff gave "a full and complete release" for personal injury attributable to, among other things, "water, rain storms, smoke . . . or other causes whatsoever unless the same is due to the gross negligence of the Released Parties." *Id.*; Doc. 17 at ¶ 10. The release applies to any issue arising from the condition or defect of the chapter house or a resident's room, or any component thereof. Doc. 17 at ¶ 11. The Housing License Agreement also provides that the prevailing party in any action brought to enforce or interpret the agreement may recover attorneys' fees. *Id.* ¶ 12.

Plaintiff also signed an Obligations of Membership on November 1, 2018. *Id.* ¶¶ 13-14. The Obligations of Membership has a provision titled "WAIVER AND INDEMNITY AGREEMENT." This heading is set apart in a different color font. Doc. 17-2 at 17. The provision states:

> I waive all claims against Delta Delta Delta Fraternity, Delta Delta Delta, an Illinois not-for-profit corporation, Delta Delta Delta National House Corporation, a Texas non-profit corporation, and any of their related entities (hereafter collectively "DDD Fraternity and Entities") for damage to . . . or injury to, or death of, any person in, upon, or about the Chapter House or otherwise arising from Member's association with Delta Delta Delta, arising at any time and from any cause other than solely by reason of the gross negligence or willful misconduct of DDD Fraternity and Entities.

Doc. 17 at ¶ 15. Plaintiff further agreed that Defendant:

2

> shall not be liable for any injury or damage to persons or property resulting from . . . water . . . or leaks from any part of the Chapter House or from the pipes, appliances, plumbing works, roof or subsurface of any floor or ceiling . . . or by dampness or by any other similar cause unless the same is caused solely by the gross negligence or willful misconduct of DDD Fraternities or Entities . . . .

*Id.* ¶ 16. The Obligations of Membership also contains a fee-shifting provision. *Id.* ¶ 17; *see also* Doc. 17-2 at 17-18.

Plaintiff filed suit in state court, and Defendant removed the case. Doc. 1. Plaintiff alleges that she began experiencing health problems shortly after she moved into the chapter house in August 2019 because of mold in her room. Doc. 17 at ¶ 20; Doc. 1-1 at 2. She alleges that Defendant "attempted some corrective measures in the fall of 2019, but did not fully address the problem until the spring of 2020." Doc. 1-1 at 2. Plaintiff moved out of the chapter house on October 22, 2019, "[b]ecause of the problems with her health, and the non-responsiveness of [Defendant]." *Id.* Plaintiff accuses Defendant of "negligence . . . in not properly maintaining the Chapter House." *Id.* at 3; *see also* Doc. 17 at ¶¶ 22-23.

After an initial scheduling conference, the magistrate judge entered a Phase I Scheduling Order. Doc. 14. The purpose of Phase I was to allow the parties to conduct limited discovery in anticipation of an early summary-judgment motion. *Id.* at 1-2. The parties were directed to focus discovery on "1) the housing waiver executed by Plaintiff upon her residency at the subject housing; and 2) the habitability of the subject housing." *Id.* at 2.

## II. STANDARD

Summary judgment is appropriate if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to demonstrate that

genuine issues remain for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). To carry this burden, the nonmovant "may not rely merely on . . . its own pleadings." *Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010) (internal quotation omitted). "Rather, it must come forward with facts supported by competent evidence." *Id.* In applying this standard, courts view the facts and any reasonable inferences in a light most favorable to the non-moving party. *Henderson v. Inter-Chem Coal Co.*, 41 F.3d 567, 569 (10th Cir. 1994). "An issue of material fact is genuine if a 'reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III.   ANALYSIS

Defendant moves for summary judgment on Plaintiff's negligence claim because Plaintiff signed waivers and releases of the claim. *See generally* Doc. 17. The parties agree that Kansas law governs. *Id.* at 10; Doc. 21 at 9.

Kansas law favors parties' freedom to contract. *Frost v. ADT, LLC*, 947 F.3d 1261, 1269-70 (10th Cir. 2020). This extends to contracts limiting liability. *See id.*; *see also Corral v. Rollins Protective Servs. Co.*, 732 P.2d 1260, 1271 (Kan. 1987) ("[T]he general rule is that contractual agreements limiting liability are valid if fairly and knowingly entered into and if not in violation of other provisions of law."). "[T]he intention to waive liability for negligence must be expressed in clear and unequivocal language." *Wagner v. SFX Motors Sports, Inc.*, 460 F. Supp. 2d 1263, 1271 (D. Kan. 2006). Such a waiver may bar a claim of ordinary negligence. *See id.* But a party cannot contract away liability for gross negligence or willful or wanton conduct under Kansas law. *LDCircuit, LLC v. Sprint Commc'ns Co., L.P.*, 364 F. Supp. 2d 1246, 1258 (D. Kan. 2005).

Defendant argues that the waiver in the Housing License Agreement signed by Plaintiff is enforceable against her because the provision was clearly set out in bold font, Plaintiff was

4

informed through a separate bold statement that the document was a binding legal agreement, and Plaintiff acknowledged that she had read and agreed to the terms of the Housing License Agreement. A similar waiver was included in the Obligations of Membership. Both documents specifically waived Defendant's liability for injuries arising from water, leaks, or dampness in a resident's room or the chapter house.

Plaintiff does not dispute these facts. It is undisputed that the waivers cover Plaintiff's ordinary negligence claim and that Plaintiff agreed to them. Plaintiff additionally concedes that the waivers "were expressed in clear and unequivocal language." Doc. 21 at 10. Based on these undisputed facts, Defendant is entitled to summary judgment on Plaintiff's negligence claim because Plaintiff waived that claim.

Plaintiff nevertheless argues that summary judgment should not be granted. First, she argues that the Kansas Residential Landlord and Tenant Act ("KRLTA") should be applied. Second, she argues that the motion is premature because additional discovery is needed on whether Defendant's conduct amounted to gross negligence, to which the waivers don't apply. Third, she argues that she did not waive her claim because she is a "neophyte," the waivers are overly broad or ambiguous, and the risk of living in the chapter house was not a high-risk activity with foreseeable danger. *Id.* at 9-11. None of these arguments are persuasive.

    **A.**    **Kansas Residential Landlord and Tenant Act**

Plaintiff suggests that the KRLTA, K.S.A. §§ 58-2540 through 58-2573, may apply. Doc. 21 at 9. Plaintiff suggests that the law prohibits the inclusion of the waivers in her rental agreements. *See id.* at 8-9 (citing K.S.A. § 58-2547(a)(4)).

As supplemental statements of fact, Plaintiff presents nine legal definitions, mostly from the KRLTA, and asserts that Plaintiff, Defendant, and the agreements at issue all fall within those

5

definitions. Doc. 21 at 6-8.[1] However, as Defendant notes, the KRLTA does not apply to a residence at a public or private institution if incidental to the provision of educational services, or to "occupancy by a member of a fraternal or social organization in the portion of a structure operated for the benefit of the organization." K.S.A. § 58-2541(a), (c). Both of these exemptions suggest that the KRLTA may not apply here. Other than stating, without any legal or factual support, that this second exemption may not bar application of the KRLTA because the room where she was exposed to mold "does not directly benefit the organization," Doc. 21 at 9, Plaintiff makes no attempt to demonstrate that the KRLTA actually does apply or what if any impact it has on the waivers. This undeveloped and factually unsupported argument is not sufficient to defeat summary judgment.

### B.     Gross Negligence

Plaintiff argues that Defendant's motion should be denied as premature because additional discovery may turn up evidence of gross negligence or willful or wanton misconduct to which the waivers would not apply. *Id.* at 9-10. The waivers, by their own terms, don't apply to gross negligence or willful misconduct. Kansas doesn't recognize "gross negligence," but instead distinguishes between ordinary negligence and wanton conduct. *Wagner*, 460 F. Supp. 2d at 1271. "Wanton conduct is a product of defendants' mental attitude, not of particular negligent acts." *Id.* It requires some showing that a party realized an imminent danger existed and recklessly disregarded it. *See id.*

Defendant argues that Plaintiff has not even alleged gross negligence or willful or wanton misconduct, let alone pointed to facts that create a genuine issue on this point. The petition only generally alleges negligence. Doc. 1-1 at 3. There are no allegations that Defendant knew of the

---

[1]    Defendant denies the applicability of KRLTA to this case. Doc. 22 at 6-11.

6

risk of mold and disregarded it. In response, Plaintiff states that she cannot determine whether gross negligence or willful or wanton misconduct occurred until discovery is complete. Doc. 21 at 9-10. She claims the initial phase of discovery was limited to remediation, which did not cover whether Defendant knew of the mold before it caused Plaintiff's injuries. *Id.* at 9.

Plaintiff is not correct that Phase I discovery was limited to remediation. The parties were instructed to focus discovery on the waivers and the habitability of the chapter house. Doc. 14 at 2. This was done specifically with a mind to an early motion for summary judgment by Defendant. The waivers, by their own terms, do not apply to gross negligence or willful or wanton misconduct. To the extent Plaintiff intended to argue that the waivers don't apply because Defendant's conduct was gross negligence or willful or wanton misconduct, the time to conduct discovery on that issue has come and gone.

Plaintiff presents no evidence to suggest that Defendant engaged in gross negligence or willful or wanton misconduct. And although Plaintiff argues that more discovery is necessary, she never identifies what discovery is needed, nor does she identify what discovery she sought during Phase I or how it was not sufficient to allow her to adequately respond to Defendant's summary-judgment motion.[2] A party "may not rely merely on . . . its own pleadings" to defeat summary judgment but "must come forward with facts supported by competent evidence." *Nahno-Lopez*, 625 F.3d at 1283. Despite having the chance to conduct discovery regarding the waivers, Plaintiff has not come forward with any facts that would demonstrate that the waivers don't apply.[3] Her unexplained wish for more discovery is not sufficient to defeat summary judgment.

---

[2] Under Fed. R. Civ. P. 56(d), a court may defer ruling on a summary-judgment motion if a "nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Here, Plaintiff has not requested additional discovery under Rule 56(d), has not provided any affidavits or declarations, and has not even identified what additional facts or discovery are needed.

[3] Plaintiff's reliance on *Fernandez v. Clean House, LLC*, 883 F.3d 1296 (10th Cir. 2018), is misplaced. That case discussed whether a plaintiff had adequately pleaded willfulness. *Id.* at 1299-1300. The issue here is whether

### C. Enforceability of Waivers

Finally, Plaintiff argues that she did not waive or release her negligence claim because she is a "neophyte," the waivers are overly broad, and the danger of living in the chapter house was not foreseeable. To the extent Plaintiff claims to be a "neophyte," *see Kansas City Structural Steel Co. v. L.G. Barcus & Sons, Inc.*, 535 P.2d 419, 424 (Kan. 1975) (enforcing agreement limiting damages and noting that "[n]one of the parties here involved were neophytes or babes in the brambles of the business world"), this does not absolve Plaintiff of her obligations. As a preliminary matter, Plaintiff offers no authority suggesting that a person's unsophisticated status renders a waiver unenforceable as a matter of law. But even to the extent a party's acumen bears on the enforceability of a waiver, it is undisputed that Plaintiff was a student at the University of Kansas at the time she entered into the agreements with Defendant. Plaintiff has advanced no facts—or even allegations—that she was a minor, did not understand the terms, or was otherwise incompetent to enter into the agreements with Defendant. To the contrary, she admits the waivers were "clear and unequivocal." Doc. 21 at 10. Accordingly, Plaintiff's argument on this point is not persuasive.

Plaintiff argues that the waivers are ambiguous because they "broadly covered" claims relating to the chapter house. *Id.* at 11. But "broadly covered" was a statement in Defendant's motion. Doc. 17 at 8. Plaintiff points to nothing in the waivers themselves that is ambiguous or overly broad. While the waivers are undoubtedly comprehensive, they specifically speak to injuries attributable to water, rain, leaks, or dampness—the precise source of Plaintiff's alleged injury—and, as Plaintiff concedes, are otherwise "clear and unequivocal." Doc. 21 at 10.

---

Plaintiff has come forward with evidence of gross negligence or willful or wanton misconduct that would create a genuine issue of fact regarding whether the waivers were inapplicable. She has not done so.

8

Plaintiff also claims that the risk of living in the chapter house was not a high-risk activity with foreseeable danger. *Id.* Plaintiff's argument on this point is not clear. To the extent Plaintiff claims that the waivers were not clear because the danger associated with living in the chapter house was not obvious, her argument is misplaced and factually unsupported. Waivers under Kansas law are enforceable if the language of the waivers is clear and unequivocal. *See Wagner*, 460 F. Supp. 2d at 1271 ("Under Kansas law, the intention to waive liability for negligence must be expressed in clear and unequivocal language."). Plaintiff admits the waivers were clear and unequivocal. Doc. 21 at 10. Further, the danger that allegedly caused Plaintiff's injury was specifically referenced in the waiver (injury attributable to water, rain, leaks, or dampness), making Plaintiff's argument that the risk was unforeseeable dubious.

Accordingly, Plaintiff has not demonstrated that a genuine issue of fact exists as to whether the waivers are enforceable.

## IV.  CONCLUSION

Plaintiff concedes that she signed clear and unequivocal waivers concerning injuries attributable to water, rain, leaks, or dampness. Defendant seeks to enforce these waivers by moving for summary judgment on her claim for negligence stemming from exposure to mold. Plaintiff fails to show a genuine issue of fact. And no reasonable jury could find in her favor on this record. The Court thus grants the motion.

THE COURT THEREFORE ORDERS that Defendant's Motion for Summary Judgment (Doc. 16) is GRANTED. Judgment is entered in favor of Defendant.

IT IS SO ORDERED.

Dated: February 28, 2022        /s/ *Holly L. Teeter*
                                HOLLY L. TEETER
                                UNITED STATES DISTRICT JUDGE

9